John R. STANLEY

v.

CF–VH ASSOCIATES, INC., et al.

Civil Action No. 93–30232–MAP.

United States District Court, D. Massachusetts.

Feb. 13, 1997.

Philip J. Ryan, Ryan, Martin, Costello, Allison & Leiter, Springfield, MA, David R. Kittay, Kittay, Gold & Krebsbach, P.C., White Plains, NY, for John R. Stanley and Transamerica Natural Gas. Corp.

Evan T. Lawson, Lawson & Weitzen, Boston, MA, for Phillip L. Zweig, CF–VH Associates, Inc. and Handelsblatt, Inc.

Jeffrey L. McCormick, Robinson, Donovan, Madden & Barry, Springfield, MA, Deborah M. Buell, Cleary, Gottlieb, Steen & Hamilton, New York City, for Handelsblatt GMBH and Verlagsgruppe Handelsblatt GMBH.

*MEMORANDUM REGARDING DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT*

(Docket Nos. 131 & 147)

PONSOR, District Judge.

*I. INTRODUCTION*

The plaintiff, John R. Stanley, charges that an article entitled, "Jack Stanley's Mexican

---

Standoff," published by defendants in the December 1990 issue of *Corporate Finance,* defamed him. Defendants have moved to dismiss the complaint, which was filed in November 1993, as untimely.

The parties' arguments are straightforward. Under Massachusetts' three-year statute of limitations for torts the plaintiff's suit was filed in time, one month ahead of the deadline. Defendants, however, contend that either New York or Texas provides the proper limitations period—one year in both states—and that the suit should therefore be dismissed.

The dispute requires this court to apply the Supreme Judicial Court's decision in *New England Telephone & Telegraph Co. v. Gourdeau Construction Co., Inc.,* 419 Mass. 658, 647 N.E.2d 42 (1995). *Gourdeau* held that the "treatment of the application of statutes of limitations as procedural will no longer be continued...." *Id.,* at 664, 647 N.E.2d 42. This decision permitted a court "to apply the statute of limitations of another jurisdiction in particular circumstances." *Id.*

The "particular circumstances" of this case require application of the one-year statute of limitations set down in New York and Texas law. Massachusetts has no substantial interest in plaintiff's claims against the publishers of *Corporate Finance.* The much greater interests of either Texas or New York in this litigation make their one-year deadline the most appropriate. For this reason, the defendants' motions to dismiss will be allowed. Because the lawsuit was untimely as to all defendants, it will not be necessary to address defendants' other arguments in support of dismissal.

## II. PROCEDURAL AND FACTUAL BACKGROUND

This case has seen both a change and a diminution of parties as it has moved through litigation. Originally, the suit was filed by Stanley and the company he heads, Trans-American Natural Gas Corporation, against the author of the offending article, Phillip L. Zweig, its publisher CF–VH Associates, Inc. ("CF–VH") and the publisher's putative parent company, Handelsblatt, Inc.

On March 28, 1996, this court adopted the Report and Recommendation of Magistrate Judge Kenneth P. Neiman to the effect that all claims by plaintiff TransAmerican or against defendant Phillip Zweig be dismissed. TransAmerican's allegations failed to state a cognizable claim; as to Zweig, the court found that Massachusetts lacked the minimum contacts required to exercise personal jurisdiction.

While the issues of the sufficiency of the complaint and personal jurisdiction were being addressed, plaintiff's counsel conceded that Handelsblatt, Inc. had been incorrectly named as a defendant and that the current defendant, Verlagsgruppe Handelsblatt GmbH ("Handelsblatt"), a German corporation, should be substituted as the acknowledged parent of the publisher CF–VH. Handelsblatt appeared in this case for the first time in April 1996. What remains before the court, then, are the claims of Stanley against CF–VH and its parent company Handelsblatt for the allegedly libellous statements contained in *Corporate Finance's* 1990 "Mexican Standoff" article.

Discovery, except on the issue of personal jurisdiction, has been stayed since September 1994 through these lengthy pretrial proceedings to permit defendants to present their threshold dispositive arguments. While plaintiff does vigorously oppose the defendants' current motions to dismiss for violation of the applicable statute of limitations, he has not argued that the stay of discovery has disabled him in pressing his opposition on this point. The facts bearing on the question of the limitations period are limited and essentially undisputed. The issue comes down to a question of law. The facts are as follows.

CF–VH published approximately 60,000 issues of the December 1990 *Corporate Finance;* of these, less than five percent, some 2,365, found their way to Massachusetts as part of the magazine's general nation-wide distribution. CF–VH is incorporated in New York and has its principal (and only) place of business there. The plaintiff Stanley lives in Texas and has no residence in Massachusetts, though he was born here and some members of his family (two of his wife's

sisters) continue to live in the Commonwealth. Stanley has a house in Connecticut and visits Massachusetts up to thirty days a year for business and social reasons. His company TransAmerican has a wholly-owned subsidiary, JRS Realty, which owns three shopping malls in Massachusetts, but JRS was not mentioned in the *Corporate Finance* article and has no involvement in this litigation. In fact, the article itself does not mention Massachusetts, but discusses events mainly in Texas. Its author, Zweig, a New Yorker, wrote the piece in Manhattan. He used no information obtained from the Commonwealth in the article. Handelsblatt, as noted, is a German corporation; its offices are in Dusseldorf.

## III. DISCUSSION

Generally, a federal court in a diversity case applies the statute of limitations that would be applied by the forum state. This court, then, should look to the statute of limitations that a Massachusetts state court judge would have used, had this case been filed in a court of the Commonwealth. For defamation, prior to the *Gourdeau* decision, a state court judge would probably have applied Massachusetts' three-year limitations period for actions in tort.

Even before *Gourdeau*, however, it was becoming less and less clear that states would necessarily apply their own statutes of limitations to actions in which they had little or no interest. Increasingly, some state courts were taking a functional approach to the limitations issue, applying the statute of the jurisdiction with the closest connection to the litigation in preference to automatic application of their own limitations period. The seminal case interpreting the statute of limitations as a substantive, rather than a procedural, matter dates back over twenty years. *Heavner v. Uniroyal,* 63 N.J. 130, 305 A.2d 412, 415 (1973). The 1988 amendments to the Restatement (Second) of Conflict of Laws § 142 (Supp.1989) reflect the movement away from automatic application of the forum state's statute of limitations.

The Massachusetts Supreme Judicial Court had been edging up to this position even before *Gourdeau*. Thus, in *Cosme v.*

*Whitin Mach. Works, Inc.,* 417 Mass. 643, 645, 632 N.E.2d 832 (1994), the SJC held that statutes of *repose* were *not* procedural for purposes of choice of law analysis, but that, instead, a functional analysis would be proper in determining which statute to apply.

This legal development took flower in Massachusetts in 1995 in the *Gourdeau* case. In that case, New England Telephone and Telegraph Company (NET) brought suit in Massachusetts against Gourdeau Construction Company, Inc. (Gourdeau) claiming that Gourdeau's faulty construction work in New Hampshire breached contractual obligations and caused damage to NET's equipment. The suit was timely under Massachusetts' six-year statute of limitations, but late under the New Hampshire three-year statute. The Superior Court Judge denied NET's motion for summary judgment, deferring to Massachusetts law at that time, which viewed statutes of limitations as procedural.

On direct appellate review, the Supreme Judicial Court noted both the development in the law towards a substantive treatment of statutes of limitations, and existing Massachusetts precedent viewing them as procedural. Justice Wilkins did, however, note the SJC's recent *Cosme* decision regarding statutes of repose.

The discussion in *Gourdeau* described at length the amendments to the Restatement regarding choice of law on the limitations issue. Section 142, as amended, states that the forum will apply its own statute of limitations to permit a claim unless: "(a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." Significantly, the *Gourdeau* decision cites comment g to § 142:

> The forum should not entertain a claim when doing so would not advance any local interest and would frustrate the policy of a state with a closer connection with the case and whose statute of limitations would bar the claim.

The holding in *Gourdeau* continued the trend in Massachusetts law, moving parallel

to the development in some, but not all, other jurisdictions. The previous treatment of statutes of limitation as merely procedural would be discontinued. As a result, the application of the Massachusetts limitations period was no longer to be automatic; in appropriate circumstances the statute of limitations of another jurisdiction would be used to determine whether a suit was timely. To conduct this choice of law analysis, the *Gourdeau* decision pointed the trial court to § 142 of the Restatement. Consideration of its criteria would now determine when circumstances dictated application of another state's statute of limitations. A trial judge should dismiss a claim if it would be barred by "the state which, *with respect to the issue of limitations,* is the state of most significant relationship to the occurrence and to the parties." *Id.,* at 663, 647 N.E.2d 42, quoting Restatement (Second) of Conflict of Laws § 142 comment e (emphasis in *Gourdeau*).

In light of this conclusion, the SJC conducted the functional analysis using the criteria set forth in § 142. Given Justice Wilkins' approach, it is difficult to give much weight to the plaintiff's argument that *Gourdeau* was intended to be prospective only. In making the "most significant relationship" analysis the court obviously had in mind the possibility that New Hampshire, rather than Massachusetts, law might apply to *Gourdeau* itself. If the SJC decision were to be prospective only, no extended, case-specific analysis would have been needed. The SJC could simply have indicated its adoption of the functional approach, set out its reasoning, and admonished the bar that it would be applied in future cases. In short, if *Gourdeau* is construed as prospective only, most of its text would be superfluous.

In fact, in *Gourdeau* the SJC *did* apply the functional analysis criteria of the Restatement, without any expressed concerns about retroactivity, and simply concluded that Massachusetts *had* the "most significant relationship" to the underlying occurrence. The court's new functional analysis, therefore, led to the same result that would have been obtained under the old procedural approach:

the Massachusetts statute of limitations controlled.

The facts that led the SJC to this conclusion in *Gourdeau* throw a revealing light on the proper analysis of this defamation case. Both NET and Gourdeau had their principal places of business in Massachusetts, Gourdeau was a Massachusetts corporation, and the contract was executed in Massachusetts. Based on this, the SJC concluded that Massachusetts "has a substantial interest in letting NET's claim go forward." *Id.,* at 663, 647 N.E.2d 42.

■ No facts of this sort may be found in the record of this case. None of the parties has a residence or place of business here. None of the acts or events that gave rise to this lawsuit took place here. Plaintiff's birth in Massachusetts, the residence of some of his in-laws here, his occasional visits and his conduct of some unconnected business in this state are not factors that give Massachusetts a "substantial interest" in letting this claim go forward. Certainly, it cannot be said that Massachusetts has the "more significant relationship" to the occurrence and the parties. On the contrary, it has *no* relationship to the occurrence, no relationship to the defendants, and virtually no relationship to the plaintiff.

The distortion of litigation, and the unfairness to defendants, caused by forum shopping is especially disturbing in defamation cases involving publications with nation-wide distribution. This problem was described eloquently by Justice Souter, then sitting as a justice of the New Hampshire Supreme Court, in his dissent in *Keeton v. Hustler Magazine, Inc.,* 131 N.H. 6, 22, 549 A.2d 1187 (1988). In that case the United States Supreme Court had reversed dismissal of the complaint for lack of personal jurisdiction. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). On remand, the district court had denied a motion to dismiss on limitations grounds and, after a verdict for plaintiff, the issue had come to the First Circuit, which then certified the question of the statute of limitations to the Supreme Court of New Hampshire. Their majority opinion confirmed that New Hampshire would apply its own six-year statute of limitations to the action, despite the

fact that neither party was a New Hampshire resident, that the only factual connection between the underlying facts and New Hampshire was the distribution of less than one percent of *Hustler's* total circulation in that state, and that the relevant statute of limitations had expired in every state in the union but New Hampshire.

Justice Souter's vigorous dissent is cited by Justice Wilkins in *Gourdeau,* 419 Mass. at 661 n. 3, 647 N.E.2d 42. The dissent points out that the need for comity among courts within the federal system should persuade a forum "to consider application of the relevant law of other jurisdictions whose substantial concerns with the problem at hand give them interests in the application of their respective laws." 131 N.H. at 15, 549 A.2d 1187. In making this analysis Justice Souter notes the superior interests of the parties' home states. Searching for an interest to balance against this he finds insufficient New Hampshire's "sole and tenuous interest ... to protect its citizens from misinformation about a little-known outsider." *Id.,* at 16, 549 A.2d 1187. While it might in some cases be proper in a multistate action between non-residents to apply the New Hampshire statute of limitations for defamation—for example, where the plaintiff was well known and her in-state activities were the subject of the libel—permitting the lawsuit where the only connection with the state was the distribution of a relatively small number of copies of a nationally distributed magazine would be "inviting the ultimate forum shopping that has occurred in this case." *Id.,* at 17, 549 A.2d 1187.

*Gourdeau* mandates a similar analysis in this defamation action. Here, both plaintiff's own home state and the home state of the alleged defamer would have required relatively prompt filing—that is, within one year of publication. This requirement worked no unfairness on plaintiff; no extensive investigation was needed to draft the complaint. Indeed, plaintiff's affidavit confirms that he *knew* he was libelled in 1990 but deliberately waited nearly three years before initiating this suit. In other words, by choosing to rely on the statute of limitations of a jurisdiction having negligible or no connection to any party, event or issue in the case, plaintiff has had the luxury of lying in wait, and dragging the possibility of litigation out almost three times as long as New York or Texas would have permitted, before bringing suit just before the deadline in Massachusetts. If *Gourdeau* means anything, it must mean that this tactic is no longer permitted in Massachusetts.

Plaintiff offers, in essence, two arguments in an effort to avoid the impact of *Gourdeau.*

His first argument is that his contacts with Massachusetts *do* give this state a "substantial interest" in this litigation. This is the first prong of the § 142 analysis. Plaintiff's reasoning on this point has a desperate quality, with counsel trying to scrape together bits and pieces of contact with this forum to construct a persuasive position. The unavoidable truth is that neither party lives here; nothing happened here related to the litigation. Plaintiff's visits and his conduct of disconnected business in this state are simply not enough. *See, Held v. Manufacturers Hanover Leasing Corp.,* 912 F.2d 1197, 1202–03 (10th Cir.1990) (applying § 142 and finding Colorado had "no substantial interest" in plaintiff's ERISA claim, even though he lived there at the time of filing suit).

A sub-part of this first argument also stretches well beyond the breaking point. Plaintiff contends that because the Supreme Court's opinion in *Keeton* viewed the distribution of a small number of magazines in New Hampshire as significant for purposes of personal jurisdiction analysis, then this "significance" becomes "substantial" in the § 142 statute of limitations analysis. Plaintiff's logic proves too much. If plaintiff's reasoning were accepted, every nationally distributed magazine, *ipso facto,* could be sued in every state in the union. This is not a functional analysis; more is needed, and that "more" is not present here.

Beyond this, as comment e to § 142 (quoted by Justice Wilkins in *Gourdeau* ) indicates, the first, "substantial interest," test is to be conducted with some sensitivity to the second, "most significant relationship," test. Plaintiff does not even attempt to argue that Massachusetts has anything remotely like the interest of either Texas or New York in the persons and occurrences described in this

litigation. Concentrating, as § 142 requires, on *the issue of the statute of limitations*—that is, the interest of a state in protecting its citizens on the one hand from libel, or on the other hand from protracted exposure to a possible libel suit—this court can only conclude that New York and Texas manifestly have the most significant relationship to this occurrence and these parties. In sum, plaintiff fails to pass either tine of § 142: Massachusetts has no substantial interest in this litigation, and New York and Texas have a more significant relationship to this case.

Plaintiff's second argument, that *Gourdeau* was intended to be prospective only, has already been addressed in part. This contention is inconsistent with the structure and logic of the decision itself, rendering much of its analysis superfluous. Why go through the functional analysis if no possibility existed that the outcome of the analysis would apply to the case then before the court?

Confinement of *Gourdeau* to prospective application only is inappropriate for other reasons as well.

First, the general rule in Massachusetts is that changes in decisional law are applied to pending cases. *See, Schrottman v. Barnicle,* 386 Mass. 627, 437 N.E.2d 205 (1982). No persuasive argument is offered in this case to depart from this rule.

Second, plaintiff's construction of Justice Wilkins' statement that "for the future ... this court's treatment of the application of statutes of limitations as procedural will not longer be continued" is tortured and unconvincing. While it is not entirely clear, plaintiff seems to be arguing that this sentence somehow signifies that this holding will apply only to cases *filed* after its issuance date. A more common sense understanding of the phrase is simply that the SJC intended to apply the new rule to cases coming before it in the future, that is, all cases arriving on appeal after *Gourdeau's* issuance date. Certainly, given the general preference for retroactivity, the SJC would have made its intent clearer if it had something else in mind.

Third, even under plaintiff's analysis, Handelsblatt would be entitled to dismissal. This corporation was not joined to the lawsuit until April of 1996, over a year after *Gourdeau* came down.

Fourth, plaintiff's arguments to the contrary notwithstanding, the factors set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), favor retroactive application. While the *Gourdeau* decision was a break with precedent, it was foreshadowed by developments in the law nationally and particularly by the amendments to the Restatement. The SJC's decision did not come out of the blue. In addition, the retroactive application of the decision does further its prospective application. Without necessarily favoring either plaintiffs or defendants, the decision points litigants away from jurisdictions with no substantial interest in the litigation and towards jurisdictions with the most significant relationship to the parties and events, essentially the same approach used to decide the choice of substantive law. Applying the decision to pending cases enhances consistency and predictability for all parties, and avoids the arbitrariness inherent in forum shopping.

Finally, application of *Gourdeau* does not work the kind of inequity or hardship recognized in *Chevron* as counselling against retroactivity. Obviously, dismissal inevitably works a hardship on any plaintiff. Here, though, plaintiff admits that he knew as soon as he saw the article that he had been defamed and immediately consulted counsel. He then consciously made the decision to keep his cards close to his chest as long as possible. Despite the policies embodied in both his own home state and the home state of the defendants favoring relatively prompt filing, he chose to rely on the statute of limitations of a jurisdiction that, even by his own argument, had at most a tangential interest in the lawsuit, and he made this choice at a time when the law governing filing deadlines was already in flux. With plaintiff and his corporation, as with Rosencranz and Guildenstern, "their defeat does by their own insinuation grow." *Hamlet,* Act V, Scene ii.

## IV. CONCLUSION

Because the statute of limitations issue is dispositive, it is not necessary to address the

defendants' other arguments regarding personal jurisdiction and the impact of Mass. Gen.L. ch. 260 § 9. For the reasons set forth above, the defendants' Motions to Dismiss (Docket Nos. 131 and 147) are hereby ALLOWED. Plaintiff's motion to amend and to vacate (Docket No. 124) will be denied by marginal notation.