INSTITUTE OF INNOVATIVE
MEDICINE, INC.,
Plaintiff

v.

LABORATORIO UNIDOS DE BIOQUI-
MICA FUNCIONAL, INC., Laborator-
ios San Agustin, Inc.; San Agustin
Medical Services, Inc; Julio Marto-
rell, His Wife Jane Doe and Insurance
Corporations X, Y and/or Z, Defen-
dants.

Civil No. 06–1155 (DRD).

United States District Court,
D. Puerto Rico.

March 24, 2009.

Francisco M. Lopez–Romo, San Juan, PR, for Plaintiff.

Miguel A. Nazario–Briceno, Nazario Briceno Law Office, San Juan, PR, for Defendants.

## *OPINION AND ORDER*

DANIEL R. DOMINGUEZ, District Judge.

Pending before the court is Defendants' *Motion for Summary Judgment* (Docket No. 32), *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgement* (Docket No. 33), *Plaintiff's Response in Opposition to Motion for Summary Judgement (Docket No. 34)*, and *Plaintiff's Supplemental Brief in Opposition to Defendants' Motion for Summary Judgement* (Docket No. 35).

Defendants, Laboratorio Unidos de Bioquímica Funcional, Inc., Laboratorio San Agustín Medical Services, Inc., and Julio Martorell (hereinafter jointly referred as "LUBF") allege that Plaintiff's request to compel Plaintiff Instituto of Innovative Medicine, Inc. (hereinafter referred to as "IIM") to arbitration should be summarily dismissed on the grounds that (1) Plaintiff is barred by the statute of limitation and/or laches doctrine and because (2) Plaintiff did not enforce any of the judgments entered by the state and federal court within the five-year time frame prescribed by local law [1].

On the other hand, Plaintiff contends that (1) Defendants are not entitled to summary judgment because genuine issues of fact exist over material facts and because (2) Defendants' statute of limitations or laches doctrine defense is inapplicable since they have not provided proof of lack of diligence by the party against whom the defense is asserted or that they have been prejudiced in any manner by IIM's prolonged acquiescence. Moreover, IIM avers that the "time frame allotted to any party to seek remedy for breach of contract is a term of fifteen (15) years." Plaintiff states that the contract in question is a dealership agreement "entered by bonafide businessmen ("merchants") in the ordinary course of business. Therefore, the Puerto Rico Commerce Code regulates this matter, since said agreement did not specify any applicable provision regarding time frames to exercise any legal action." (Docket No. 35) Consequently, IIM contends that Defendants' allegation that Plaintiff's action is time barred is wrong as a matter of law.

After carefully reviewing the instant case's record and the pending motions, the Court, for the reasons stated below, **GRANTS** Defendants' *Motion for Summary Judgment* (Docket No. 32).

## I. Brief Factual Background

The instant case's Complaint alleges that on **February 12, 1997**, IIM and LUBF entered into a dealership agreement, where LUBF was appointed IIM's

---

1. Rule 51.1 of the Puerto Rico Rules of Civil Procedure provides that:

   The party in whose favor judgment is entered may execute the same by the proceeding fixed in Rule 51 at any time within five (5) years after it becomes final. Upon expiration of that period, the judgment may be executed by leave of court, on motion of a party and notice to all parties. If after entry of the judgment the execution thereof is stayed by order or judgment of the court or by operation of law, the time the execution has been suspended shall be deducted in computing the five (5) years during which the writ of execution may be issued.

exclusive dealer in Puerto Rico (Docket No. 33–2). As IIM's exclusive dealer, LUBF was granted exclusive rights to represent IIM's stateside laboratory services already under contract with IIM, in order to develop the local market for IIM's laboratory services promoting its use which was only available through IIM's own existing network. Furthermore, Defendant Julio Martorell, IIM dealer, assumed personal liability by guaranteeing payment for all products or services under the dealership agreement. The dealership agreement clearly stated that: "Any dispute, disagreement or controversy between the Institute and the Dealer shall be resolve[d] within five business days or professional mediation or arbitration by any impartial party as agree by the Institute and the Dealer will be necessary." (Docket No. 33–2)

IIM avers that LUBF did not comply with its duties and obligations comprised in the dealership agreement as IIM's exclusive dealer in Puerto Rico. Accordingly, IIM filed an action in Puerto Rico state courts on **February 3, 1998,** alleging breach of contract and failure to honor payment obligations. Nevertheless, on **June 5, 1998,** a complaint was also filed before this court against the same parties, premised on the same nucleus of operative facts, and with the same allegations.

On **December 21, 2000,** the state court entered a judgment dismissing the case without prejudice for lack of prosecution. Likewise, on **January 16, 2001,** the district court dismissed the case without prejudice for want of prosecution. On **February 8, 2006,** IIM filed a diversity action for damages pursuant to *28 U.S.C. § 1332* in order to compel arbitration, and alleging the same causes of action that were previously raised in both state and federal court.

## II. Uncontested Facts

The Court shall briefly list the facts that have been admitted by LUBF pursuant to *Defendants' Statement of Uncontested Facts* (Docket No. 32):

1. Paragraph 1: On February 12, 1997, IIM and Laboratorios Unidos de Bioquímica Funcional, Inc. entered into an agreement. In essence, IIM was to serve as a referral laboratory to Laboratorios Unidos for certain medical tests.

2. Paragraph 3: On June 5, 1998, IIM filed a similar complaint before federal courts against the same parties, premised on the same nucleus of operative facts as those contained in the state court complaint, and based on the same allegations as raised in the instant case. Said complaint raised the same causes of action i.e. "collection of monies owed, breach of contract, breach of non-competition agreement and tortuous interference."

3. Paragraph 5: On March 18, 1999, IIM filed a notice of appeal after judgment was entered dismissing the case with prejudice for lack of prosecution on April 16, 1999.

4. Paragraph 7: On November 30, 1999, IIM filed its appellate brief before the United States First Circuit Court of Appeals.

5. Paragraph 8: On June 26, 2000, the state court amended its judgment dismissing the case for want of prosecution without prejudice.

6. Paragraph 10: After the appellate process concluded and several memoranda were filed by the parties, on January 16, 2001, this court entered

a judgment dismissing the case without prejudice.[2]

7. Paragraph 11: On February 15, 2006, IIM filed the instant case, alleging the same causes of action that were previously raised in the state and federal courts against the Defendants. The Court notes that IIM filed the complaint in federal court on February 8, 2006, and not on February 15, 2006. *See* Complaint, Docket No. 1.

The following facts have been admitted in part or denied due to errors in dates which clarifications were not opposed:

1. Paragraph 2 of Defendants' *Statement of Uncontested Material Facts* (Docket No. 32). "As previously stated, the Dealership Agreement was signed on February 12th, 1997, not February 10, 1997 as stated." See Docket No. 34, 2 and Dealership Agreement, Docket No. 33–2. After examining the dealership agreement, the Court notes that both parties signed and sealed the agreement on February 10, 1997, although it was subscribed before a notary public by Mr. Julio Martorell on February 12, 1997.

2. Paragraph 4 of Defendants' *Statement of Uncontested Material Facts* (Docket No. 32). The judgment dismissing the case with prejudice for lack of prosecution was entered on April 15,1999 and not on February 23, 1999. See Docket No. 34, 4.

The following uncontested facts were denied without further opposition:

1. Paragraph 6 of Defendants' *Statement of Uncontested Material Facts*

(Docket No. 32). In relation to Defendants' statement that IIM's state court complaint was dismissed with prejudice for lack of prosecution because it languished in court, plaintiff contends that "[d]efendants failed to comply with the previous orders of this Honorable Court and with the agreement entered into on February 12th, 1997, which states that all parties agreed to compulsory mediation in case any disagreement developed between the parties. Defendant's statement of *fact* that "IIMI's state court's complaint was languishing much in the way it languished in this Court"; and that "Superior Court had grown tired of IIMI's inaction" is false." *See* Docket No. 34, 6.

2. Paragraph 9 of Defendants' *Statement of Uncontested Material Facts* (Docket No. 32). Plaintiff denies without further clarification that "[o]n December 21, 2000, the state court issued another amended judgment as plaintiff requested to clarify that judgment entered without prejudice and it intended to try the case in Federal Court." See Docket No. 34, 9.

## III. Applicable Law

### A. Summary Judgment Standard

The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

---

**2.** The judgment read as follows: "Having Plaintiff filed a Demand for Arbitration under the Commercial Arbitration Rules of the American Arbitration Association, it is hereby ORDERED and ADJUDGE that the case be DISMISSED without prejudice." Docket No. 32 ¶ 10.

*See Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *Abbadessa v. Moore Business Forms, Inc.,* 987 F.2d 18, 22 (1st Cir.1993). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there are "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997). When the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997).

■ At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Company v. Hayes,* 116 F.3d 957 at 959–60 (1st Cir.1997); *see also Suarez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000); *Cortes–Irizarry,* 111 F.3d at 187; *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). " 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' " *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105(2000)(*quoting Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *see also Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554–555, 110 S.Ct. 1331 108

L.Ed.2d 504 (1990); *Continental Ore Co. v. Union Carbide & Carbon Corp.,* 370 U.S. 690, 696, n. 6, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962).

Moreover, "[i]f the adverse party does not [file an opposition], summary judgment, **if appropriate,** shall be entered against the adverse party." Fed.R.Civ.P. 56(e) (*emphasis ours* ). Nevertheless, the First Circuit Court of Appeals has made clear that failure to timely oppose a motion for summary judgment, does not, in itself, justify entry of summary judgment against the party; therefore, a District Court is "obliged to consider the motion on the merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate." *See Kelly v. United States,* 924 F.2d 355, 358 (1st Cir.1991); *see also Lopez v. Corporacion Azucarera de Puerto Rico,* 938 F.2d 1510, 1517 (1st Cir.1991) (holding that before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law). In the case of failure to oppose a motion for summary judgment, the consequence "is that the party may lose the right to file an opposition." *See Mullen v. St. Paul Fire & Marine Ins. Co.,* 972 F.2d 446, 451–52 (1st Cir.1992) (discussing unopposed motion for summary judgment). Finally, a party that fails to properly oppose a motion for summary judgment, does so at its own risk and peril. *See e.g. Corrada Betances v. Sea–Land Service, Inc.,* 248 F.3d 40, 43 (1st Cir.2001); *Hebert v. Wicklund,* 744 F.2d 218, 223 (1st Cir. 1984). However, notwithstanding that there is no opposition to a summary judgement, the trial Court is not relieved from entertaining the merits and may not grant the request on the merits as a sanction. *See de la Vega v. San Juan Star,* 377 F.3d 111(1st Cir.2004)

Controversies as to issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgement. *Mulero–Rodriguez v. Ponte, Inc.*, 98 F.3d 670, 677(1st Cir.,1996) (reversing summary judgement and emphasizing that "determinations of motive and intent ... are questions better suited for the jury")(internal quotation marks omitted) (citation omitted)

> We believe that summary judgment procedures should be used sparingly ... where the issues of motive and intent play leading roles ... It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given to their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.'

*See Poller v. Columbia Broad. Sys.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *cf. Pullman–Standard v. Swint*, 456 U.S. 273, 288–90, 102 S.Ct. 1781, 72 L.Ed.2d 66(1982) (discriminatory intent is a factual matter for the trier of fact); *see also Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1121 (1st Cir.1995); *Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 107 (1st Cir.1988); *Lipsett v. University of P.R.*, 864 F.2d at 895. . "[J]ury judgments about credibility are typically thought to be of special importance. Thus courts are particularly cautious about granting summary judgment in such cases." *See Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir.1983)(*citing Gual Morales v. Hernandez Vega*, 579 F.2d 677, 680–81 (1st Cir.1978)); *see also Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 433 (1st Cir.2000).

However, "even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.*, 95 F.3d 86, 95 (1st Cir.1996).

## B. ANALYSIS

■ This action is based on diversity jurisdiction. Therefore, as it has been well settled in diversity cases, federal courts are to apply the substantive law corresponding to the state or territory where the federal district court is found. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 92, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Correa v. Cruisers*, 298 F.3d 13, 22 (1st Cir.2002); *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13 (1st Cir.2000); *Fitzgerald v. Expressway Sewerage Constr., Inc.*, 177 F.3d 71, 74 (1st Cir. 1999). Since IIM and LUBF executed the agreement in Puerto Rico and is a contract relating to a service agreement relating to be performed in Puerto Rico, the Court shall turn to applicable local substantive law.

■ LUBF requests this Court to summarily dismiss IIM's complaint as its action is time barred by the statute of limitation and/or laches doctrine; and because it did not enforce any of the judgments entered by the state and federal court within the five (5) year time frame prescribed by law. See Docket No. 32.

Defendants sustain that Plaintiff had a duty to file a claim to collect for the unpaid professional services well before December 21, 2003. Notwithstanding, plaintiffs filed the correspondent complaint on February 8, 2006. Hence, Defendants sustain that at the time the complaint was filed the action was already fatally time-barred.

Plaintiff, on the other hand, contends that the applicable statute of limitations in this case is fifteen (15) years. For that

reason, Plaintiff avers that Defendants' contention that IIM's action is time barred is wrong as matter of law.

The Court proceeds to analyze both contentions regarding the applicable statute of limitations for this type of contract.

LUBF contends that the professional services in controversy, which allegedly were not paid, were fees related to clinical laboratory tests, and that these tests were a result of professional services rendered by a technician. LUBF further contends that since the services rendered were by a technician, said services are therefore enclosed within the term "professor" of 31 L.P.R.A. § 5297, as the payments that were collected were the result of the "exercise of [someone's] profession". 31 L.P.R.A. § 5297. Consequently, LUBF alleges that as stated in 31 L.P.R.A. § 5297 "[a]ctions for the [payment of the technician's fees] shall prescribe in three (3) years".[3]

LUBF avers that the professional services rendered by IIM were rendered on or before 1998 and that both complaints, in state and federal courts, were filed within the prescriptive period established in Puerto Rico Civil. Code, *31 L.P.R.A. § 5297.* LUBF further avers that, because both, the state and federal actions were allegedly dismissed, IIM had until

December 21, 2003 to file a claim.[4] Consequently, LUBF contends that IIM's claim is time barred since the latest complaint was filed on February 8, 2006, therefore alleging that the action should be summarily dismissed.

On the other hand, IIM avers that the dealership agreement in question is regulated by the Puerto Rico Commerce Code, since said agreement did not specify any applicable provision regarding the time frame to exercise any legal action derived from the contract. *A.J.M. Meat Packing, Inc. v. Bayamón Can, Inc.,* 2006 WL 3951545 (2006); *Candido Oliveras, Inc. v. Universal Insurance Company,* 141 D.P.R. 900, 921 (1993).

All contracts entered into after the Puerto Rico Commerce Code 1998 amendment, which do not explicitly state a time frame to exercise any legal action, shall have an applicable term of five (5) years to claim breach of contract. "The actions that by virtue of this Code do not have a fixed term to be elucidated in a trial, shall prescribe after five (5) years." *10 L.P.R.A. § 1902.* Nonetheless, Plaintiff addresses the Court to note that since the parties executed their agreement on 1997, said 1998 amendment, does not affect said agreement. See Docket No. 35. Section 2 of Act Nov. 9, 1998, No. 272, provides:

**3.** 31 L.P.R.A. § 5297 states:

"Actions for the fulfillment of the following obligations shall prescribe in three (3) years:
(1) For the payment of judges, lawyers, registrars, notaries public, experts, agents, and clerks, for their charges and fees and the expenses and disbursements incurred by them in the discharge of their duties or offices in the matters to which the obligations refer.
(2) For payments to apothecaries for medicines which they have supplied; to professors and teachers for their salaries and stipends for the instruction they have given, or for the exercise of their profession, art, or trade.

(3) . . .
(4) . . ."
The time for the prescription of actions referred to in the three (3) preceding paragraphs shall be counted from the time the respective services have ceased to be rendered.

**4.** IIM denies that on December 21, 2000, the state court issued another amended judgment as plaintiff requested to clarify that judgment entered without prejudice and it intended to try the case in the Federal Court. Notwithstanding, plaintiff admitted that on January 16, 2001, this Court entered a judgment dismissing the case without prejudice.

"This provision of this Act [which amended this section] shall be applicable to events that occur after the effective date thereof. The valid agreements executed prior to the effective date specified in § 3 shall be governed by the Act in effect at the time they were made."

Accordingly, IIM avers that in view of the fact that the detrimental acts that allegedly resulted in breach of contract occurred before 1998, LUBF has a fifteen(15) year period to seek remedy for breach of contract, since before the 1998 amendment, "[c]ontract claims that are covered by Puerto Rico's Commerce Code but are not designated for special prescriptive treatment automatically fall under the Civil Code's 15–year catch-all provision." *31 L.P.R.A. § 5294; Candido Oliveras, Inc.*, 141 D.P.R. at 921. Hence, IIM alleges that Defendants' contention that the action is time barred is wrong as matter of law.

The Court shall now proceed to analyze the nature of the dealership agreement and its applicable law regarding the time frame prescribed to seek remedy in case of alleged breach of contract.

The agreement in this case is based on a principal and dealer relationship. The Puerto Rico Supreme Court has defined dealer as "an independent entrepreneur who has established a continuing relationship, either fixed or indeterminate, with another principal, for the distribution of a product or service." Also, it has determined that the purpose of a dealership agreement is ultimately to "create, develop, and coordinate a market and to obtain new clients." *Roberco, Inc. y Roberto Colon v. Oxford Industries, Inc.*, 122 D.P.R. 115, 22 P.R. Offic. Trans. 107, 122 (1988).

> In order to determine if a "dealership" is involved, several factors must be taken into consideration, among them, if the "dealer" actively promotes the product and/or concludes contracts; if he keeps an inventory; if he has a say on price fixing; if he has discretion to fix the sales terms; if he has delivery and billing responsibilities and authority to extend credit; if he independently or jointly embarks on advertising campaigns; if he has assumed the risks and responsibilities for the activities undertaken; if he buys the product; and if he has facilities and offers product-related services to his clients.

*Roberco, Inc. y Roberto Colon*, 122 D.P.R. 115, 22 P.R. Offic. Trans. at 122.

Notwithstanding, it has been established that these factors are not exhaustive, since a complete list is not intended, and "no single factor is conclusive by itself and none has more weight or importance than the others." *Id.* These factors must be scrutinized and weighed in the facts of each controversy in order to resolve if an Act 75 dealership agreement is involved in the case.

As previously stated, this Court has ruled that in order to qualify as "dealer" under the meaning of Law 75, several factors had to be present. But, nonetheless "the ultimate matter to be determined is whether all activities performed, be their warehousing, delivery, and advertising, add up to the development of a market through promotion and closing of sales contracts." *Mario R. Franceschini, Inc. v. Riley Co.*, 591 F.Supp. 414 (D.Puerto Rico 1984). Moreover, federal courts have held that

> for purposes of Act 75 a person who invests nothing in promotion or inventory, assumes no sales risk, is not actually and effectively in charge of the product's distribution in Puerto Rico, **cannot** be classified as a "dealer." In any case, **he may be considered a sales representative on commission, but not a "dealer"**.

*Roberco, Inc. y Roberto Colon,* 122 D.P.R. 115, 22 P.R. Offic. Trans. at 118(emphasis added).

As it is explicitly stated in the agreement, LUBF agreed to act as IIM's dealer having the exclusive rights of sale, promotion, and development of IIM's products and services in Puerto Rico and the United States Virgin Islands. Accordingly, LUBF consented to ethically promote IIM's services, secure effective service, delivery, and quality presentation of test results as well as to contact potential customers and to handle all customer sales, billings, collections, and supplemental services to support laboratory test interpretations. Meanwhile, IIM agreed to provide LUBF with the promotional material sufficient to support LUBF's office in its effort of promoting its services. Also, plaintiff agreed to provide at its expense, training materials, support or lectures so as to ensure LUBF's staff in the sale and services of customer accounts. Also, LUBF agreed to keep sufficient inventory supplied by Institute in order to promote LUBF services by generating laboratory reports, test supplies, etc. (Docket No. 33-2).

In the instant case, Plaintiff agreed to keep inventory and to be responsible for all the expenses incurred in its physical office, including its personnel, insurance, and office supplies; had delivery responsibilities; and agreed that LUBF shall "use his best effort to vigorously and ethically promote the services" and "endeavor to generate or create more tests". Agreement, Docket 33-2. Therefore, Institute had significant expectations regarding LUBF's special ability to "effectively promote demand for said testing services". Agreement, Docket 33-2. Also, LUBF had control over sales terms, billings, and credit. Moreover, although the agreement stated that LUBF shall not liable for any

expenses deriving from transportation of samples from LUBF's main office to the testing laboratories or for laboratories kits provided by laboratories, LUBF assumed risk "against any injury, loss, damage, or expense including but not limited to attorney's fees, arising out of or resulting from distributor's possession, use, demonstration or sale of any of the products or services (unless caused by Institute negligence), or out of Dealer's failure to procure insurance." Agreement, Docket 33-2.

Therefore, this Court concludes that according to the Puerto Rico Supreme Court, LUBF assumed the responsibilities or risks attached to a "dealer." Under these circumstances, we consider that LUBF actually and effectively was Instituto's "dealer" under Act 75.

■ "When hearing a diversity case, a federal court generally applies the statute of limitations that the forum state would apply." *Matosantos Commercial Corporation v. SCA Tissue North America, LLC,* 329 F.Supp.2d 255 (D.Puerto Rico 2004)(citing *Stanley v. CF–VH Assoc. Inc.,* 956 F.Supp. 55, 57 (D.Mass.1997)); see also *Valedon Martinez v. Hospital Presbiteriano de la ...,* 806 F.2d 1128, 1133 (1st Cir.1986)("When applying Puerto Rico law to substantive matters, the Puerto Rico courts also apply Puerto Rico's statute of limitations.")

■ Pursuant to Puerto Rico law, an agreement is ruled by Act 75 " 'irrespective[ ] of the manner in which the parties may call, characterize or execute such relationship,' so long as the parties participate in the supply and distribution of merchandise." *Basic Controlex Corp., Inc. v. Klockner Moeller Corp.,* 202 F.3d 450, 454 (1st Cir.2000)(quoting *10 L.P.R.A. § 278(b)* ). The statute of limitations for Act 75 claims is "three years reckoning from the date of the definite termination of the dealer's contract, or of the detrimental

acts." 10 L.P.R.A. § 278(d). As stated in the agreement, LUBF agreed to promote IIM's services and endeavor to generate or create more tests, have electronic equipment in order to secure service, delivery and presentation of the test results, as well as supplying with needed materials after its agreement with IIM on February 12, 1997 (Docket No. 33–2). The Court concludes that the contract constitutes a dealership agreement regulated by Puerto Rico's Act 75, 10 L.P.R.A. § 278, et al. Consequently, the Court finds that the three (3) year statute of limitations, provided by Act 75, applies to the agreement between the parties and therefore to Plaintiff's cause of action. The limitations period provided by Act 75, overrides the limitations period that otherwise might have applied. *PaineWebber Inc.*, 136 D.P.R. at 541, 1994 WL 909748 (applying the specific three-year statute of limitations in Puerto Rico's Uniform Securities Act over the general fifteen-year period in Article 1864 of Puerto Rico Civil Code). "We strictly construe a statute of terms of which are clear and unambiguous." *Basic Controlex Corp., Inc.*, 202 F.3d at 453(citing *Pritzker v. Yari*, 42 F.3d 53, 68 (1st Cir.1994)).

■ The Court notes that Puerto Rico's state courts have affirmed that where there is a gap in Act 75, it is to be filled by the applicable supplemental provisions of the Commercial Code. *Pacheco v. National Western Life Insurance Company*, 22 P.R. Offic. Trans. 49, 53, 57(The Puerto Rico Supreme Court held that article 941 of the Puerto Rico Commerce Code governed the tolling of the statute of limitations provided by the Puerto Rico Dealer's Act). Nevertheless, this Court finds that since there

is no gap in Act 75 regarding its application to the present case, the applicable statute of limitations is the three (3) year period established by Act 75. Furthermore, the First Circuit Court of Appeals has established that when faced with a contradiction between the requirements of a specific statute and the terms of a general law, "the provisions of the specific statute prevail." *Basic Controlex Corp., Inc.*, 202 F.3d at 453. Moreover, in regards to the same controversy, the Puerto Rico Supreme Court has established that when faced with a conflict between provisions in a specific statute (here, Act 75) and the terms of a general law (here, the Puerto Rico Commerce Code), the provisions of a specific statute predominate. See *Id.* at 453 (citing *PaineWebber Inc.*, 136 D.P.R. 541, 1994 WL 909748 at *2). For the reasons previously stated, this Court finds that Act 75's three-year statute of limitations preempts the fifteen-year statutory period that applies to breach of contract actions under the Puerto Rico Civil Code. See *Basic Controlex Corp., Inc.*, 202 F.3d at 454.

IIM filed both complaints, before the state and federal courts on **February 3, 1998** and **June 5, 1998** respectively. Both actions were ultimately dismissed without prejudice, the state claim on **December 21, 2000** and the federal claim on **January 16, 2001.**[5] Subsequently, on **February 8, 2006,** IIM filed a complaint in this court claiming the enforcement of an arbitration clause contained in the contract entered into by IIM and LUBF and collection of damages resulting from breach of contract.

As previously stated, the local statute of limitation to apply to this case is three

---

**5.** Defendants, state in their Statement of Uncontested Facts (Docket No. 32), that on December 21, 2000, the state court issued another amended judgment as plaintiff requested to clarify that judgment be entered without prej-

udice and it intended to try the case in federal courts. This fact was denied without further explanation by Plaintiff in its Opposition to Defendants' Summary Judgment.

years "reckoning from the date of the definite termination of the dealer's contract, or the performing of the detrimental acts, as the case may be." *10 L.P.R.A. § 278(d)*. Although the initial claims filed in state (February 3, 1998) and federal (June 5, 1998)court were within the time period prescribed by law, since the alleged "detrimental acts" commenced on January 6, 1998 when IIM avers that LUBF acted in "undue competition against - the Plaintiff . . . thus causing irreparable injury to the Plaintiff", see e.g. Docket No. 1, the claim filed in this court on February 8, 2006, is time barred. This district has established that "prescription terms are tolled by both judicial and extrajudicial claims, whereas caducity terms are only and exclusively tolled by judicial claims." *Pacheco v. National Western Life Ins., Co.,* 640 F.Supp. 900, 903 (1986). Furthermore, according to local law, when a prescription term is interrupted the effect is that the term starts to run anew. See *Fernandez v. Chardon,* 681 F.2d 42, 53 (1st Cir.1982). Moreover, "[g]eneral rule of Puerto Rico law is that timely commencement of suit followed by voluntary or non-prejudicial dismissal causes entire limitations period to run anew from date previous action came to definite end." *Lopez–Gonzalez v. Municipality of Comerio,* 404 F.3d 548 (1st Cir.2005); *Silva–Wiscovich v. Weber Dental Mfg. Co.,* 835 F.2d 409 (1st Cir. 1987).

As previously discussed, both judgments entered by state and federal court were ultimately dismissed. IIM's state claim was dismissed without prejudice on December 21, 2000. Based on Act 75's three-year statute of limitations, IIM had until **December 21, 2003,** to file a claim in state court since the state claim was dismissed on **December 21, 2000.** The Court also finds that in view of the fact that judgment dismissing the federal claims of collection of monies, breach of non-competition agreement, breach of contract, and tortuous interference, was entered on **January 16, 2001,** and the instant claim was filed on **February 8, 2006,** the complaint filed with this Court is also barred since Plaintiff failed to timely file the complaint before the three year period stated in local law.[6]

The Puerto Rico Supreme Court has also examined the figure of the "singular representative", which includes the figure of the "traveling salesman". "The traveling salesman can be: an independent agent whose services to different principals are compensated at a fixed rate; a salesman on commission, who receives a commission on the sales made, and the company salesman, who is on the company payroll." *Roberto, Inc. y Roberto Colin,* 122 D.P.R. 115, 22 P.R. Office. Trans. at 119.

A sales representative is "an independent entrepreneur who establishes a sales representation contract of an exclusive nature, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico." *10 L.P.R.A. § 279(a).*

The agreement established between a sales representative and a principal, through which, and regardless of the way in which the parties establish, delin-

---

6. The Court notes that although Plaintiff denies without explanation Defendants' assertion that on December 21, 2000, the state court issued another amended judgment as plaintiff requested to clarify that judgment be entered without prejudice and it intended to try the case in federal courts, it would not change the fact that Plaintiff's action is time barred due to the fact that it is a contested fact that the state court amended its judgment dismissing the case for want of prosecution without prejudice on June 26, 2000. Therefore, it is of no relevance if ultimately the judgment was entered on June 26, 2000, or on December 21, 2000, since the action would also be time barred.

eate or formalize said agreement, **the party of the first part commits himself to making a reasonable effort and due diligence in the creation or expansion of a market** which is favorable for the products that the principal sells, directed at capturing clientele to offer it a product or service marketed by him in Puerto Rico, and the party of the second part is bound to comply with the commitments that may result from the sales representative's efforts and coordination and to pay the previously-accorded commission or remuneration.

*10 L.P.R.A. § 279(c).*

This Court notes that at times it can be burdensome to distinguish between an independent sales representative and a dealer, due to the fact that both maintain a similar relationship with the principal. Both are required to fulfill the following condition: to make a reasonable effort and due diligence in the creation or expansion of a market which is favorable for the products that the principal sells. Also, both are autonomous in their role as middlemen.

In an attempt to distinguish these two figures, the Puerto Rico Supreme Court has ruled that contrary to a sales representative "[t]he principal-dealer relationship is one of collaboration in the distribution and sale of a product. They are not connected by any dependency agreement or relationship subordinating one enterprise to the other." *Medina & Medina v. Country Pride Foods, Ltd.,* 122 D.P.R. 172, 187 (1988).

As previously stated, this Court determines that the relationship between Instituto and LUBF is one of a principal and a dealer, thus being protected under Act 75. Notwithstanding, it is stated that under either circumstance, (a)whether acting as a "dealer" or (b)under the figure of the "singular representative" or "traveling sales-

man", the action is barred since every action derived from the relationship between a sales representative and a principal "shall prescribe three (3) years from the definitive date termination of the sales representation contract or of the impairing acts, as the case may be." *10 L.P.R.A. § 279h.* Consequently, even if LUBF is considered to be a sales representative, the complaint filed with this Court would also be barred since Plaintiff failed to timely file the complaint before the three year period stated in local law. For that reason, Plaintiff's action is barred since it failed to comply with the limitation period that governs this action.

### IV. *Conclusion*

For the reasons stated above, the Court **GRANTS** Defendants' *Motion for Summary Judgment* (Docket No. 32). Consequently, the instant case is hereby dismissed with prejudice. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**